**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda Nelson, et al., | No. CV-17-03304-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Pacwest Energy LLC, | |
| Defendant. | |

Plaintiffs Amanda Nelson ("Nelson") and Louis Fisher ("Fisher") (collectively "Plaintiffs") have filed a one-count, punitive class action lawsuit against Defendant Pacwest Energy, LLC dba Jacksons Car Wash ("Jacksons"). Plaintiffs seek injunctive relief and actual and statutory damages resulting from Jacksons' violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq*. The particular provision of the EFTA at issue here states that "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, *and a copy of such authorization shall be provided to the consumer when made*." 15 U.S.C § 1693e(a) (emphasis added). Plaintiffs contend they were not provided a copy of their authorization as required by the statute. (Doc. 19 at ¶ 27). The EFTA allows for consumers to bring suit for money-damages when a violation of its provisions occur, and further authorizes consumers to obtain attorney's fees if they are successful. *See*

§ 1693m(a).

Presently before the Court is Jacksons' Motion to Dismiss the First Amended Complaint ("FAC"). (Doc. 23). Jacksons argues that Plaintiffs lack standing to bring a claim under the EFTA. Jacksons contends that Plaintiffs did not suffer a concrete injury as a result of Jacksons' failure to provide Plaintiffs a copy of their written authorization at the time Fisher purchased a monthly car wash plan. Jacksons further argues that any such injury in fact cannot be attributed to Jacksons.

The Court originally scheduled oral argument on the matter. After a thorough review of the parties' arguments and evidence, however, the Court determined that additional argument would not aid in the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same). Accordingly, the Court vacated the hearing scheduled for July 19, 2018. For the following reasons, the Court will now grant Jacksons' motion.

## I. Procedural Background

Plaintiffs filed their original complaint on September 22, 2017. (Doc. 1). That complaint alleged two violations of 15 U.S.C. § 1693e(a). (*Id.*) Specifically, Plaintiffs alleged that Jacksons initiated preauthorized electronic fund transfers out of their bank account without providing Plaintiffs (1) written authorization or its equivalent to do so; and (2) a copy of their signed, written authorization. (Doc. 1). On November 17, 2017, Jacksons moved to dismiss that complaint pursuant to Fed. R. Civ. P. 8(a), 12(b)(1), and 12(b)(6), or alternatively to strike Plaintiffs' class action allegations under Rule 12(f), 23(c)(1)(A), and 23(d)(1)(D). (Doc. 14). Jacksons also requested that the Court take judicial notice of the Automatic Recharge Authorization Agreement signed by Plaintiff Louis Fisher (the "Authorization") (Doc. 15-1) attached to the Declaration of Jacksons' Vice President Sean Storer ("Storer") (Doc. 15). (Doc. 16). Instead of responding to Jacksons' motion to dismiss or the request for judicial notice, Plaintiffs thereafter

amended their complaint. (FAC, Doc. 19).[1] The FAC removed the claim that Jacksons failed to obtain Fisher's written authorization to electronically debit Plaintiffs' account, but maintained the claim that Jacksons failed to provide Plaintiffs with a copy of Fisher's Authorization as required by the EFTA. (Doc. 19). Jacksons thereafter filed this Motion to Dismiss the FAC (Doc. 23). Jacksons contends that Plaintiffs lack standing to sue under the EFTA and as a result, this Court lacks subject matter jurisdiction over Plaintiffs' claim. (Doc. 23).

**II. Factual Background[2]**

Plaintiffs' FAC alleges that in November 2016, Fisher took his vehicle to get a car wash at one of Jacksons' car wash locations. (Doc. 19 ¶ 16). While there, a Jacksons employee told Fisher that he could get a month of unlimited carwashes for $25.00. (*Id.* ¶ 18). When Fisher agreed to the purchase, the employee gave Fisher a ticket titled "Automatic Recharge Authorization" and told him to take it to the checkout register located within the lobby of Jacksons' store.

The Authorization provided to Fisher states in part, "I authorize Jacksons Car Wash #8107 to charge my credit card account $40 on a monthly basis for the Unl. VIP Sld plan. I understand this Automatic Recharge Authorization shall remain in force until I cancel by giving 15 days written notice." (Doc. 15-1). Fisher's signature is below this language. (*Id.*) The Authorization also states, "Please complete and verify your information on this receipt and take it to the Car Wash lobby cashier to complete your plan enrollment and receive your FAST PASS tag. Your plan is NOT active until then." (*Id.*)

---

[1] Plaintiffs' amended pleading rendered the motion to dismiss Plaintiffs' original complaint moot. *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (*en banc*) ("[A]n amended complaint supersedes the original complaint and renders it without legal effect"). The Court accordingly denies as moot Jacksons' first motion to dismiss (Doc. 14).
[2] The factual summary is based on the allegations in the FAC (Doc. 19), Jacksons' Motion to Dismiss the FAC (Doc. 23), and the Declaration of Sean Storer (Doc. 15) and Fisher's signed Authorization attached thereto (Doc. 15-1).

As instructed, Fisher took the ticket to another Jacksons employee and paid for his purchase using a debit card owned by Fisher and Nelson. Although he no longer contends that he did not provide written Authorization to the transfers, Fisher alleges that he was not provided a copy of the Authorization at the time he made the purchase. (Doc. 19 ¶ 27).

In accordance with the Authorization terms, Jacksons began to debit a bank account owned by Fisher and Nelson on a monthly basis in December 2016. Plaintiffs say they discovered the monthly debits in June 2017, nearly six months later. (Doc. 19 ¶ 25). In their FAC, Plaintiffs allege that they were unaware that Jacksons would be taking money from their bank account on a monthly basis. (Doc. 19 ¶ 28). They also allege that they were confused and claim they had to "incur the time, expense, and disutility associated with discovering why [Jacksons] had done so." (*Id.* ¶ 29). They allege that they were forced to obtain counsel to investigate the matter and that the failure to provide them with a copy of Fisher's signed, written authorization exposed them to an "increased risk of fraud." (*Id.* ¶¶ 30 & 31).

Jacksons now moves to dismiss Plaintiffs' one-count Amended Complaint under Federal Rule of Civil Procedure 12(b)(1). Jacksons specifically argues that the Plaintiffs have failed to establish that they have standing to sue under the EFTA.

**III. Discussion**

**A. Subject Matter Jurisdiction**

Jacksons challenges the factual basis for this Court's subject matter jurisdiction. (*See* Doc. 23 at 6-7). When a party makes a factual, as opposed to facial[3], attack on the district court's subject matter jurisdiction under Rule 12(b)(1), as Jacksons has, the court "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d

---

[3] "'A facial attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction.'" *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (*quoting Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014)). "[A] facial attack is easily remedied by leave to amend jurisdictional allegations pursuant to 28 U.S.C. § 1653." *Id.*

1214, 1242 (9th Cir. 2000). Moreover, "unlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint…" *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n. 4 (9th Cir. 2006). Instead, a factual attack contests the truth of the plaintiff's factual allegations, "usually by introducing evidence outside the pleadings." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 112 (9th Cir. 2014)). Unlike a facial attack, a factual attack imposes upon the plaintiff "an affirmative obligation to support jurisdictional allegations with proof." *Id*; *see also St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (party opposing 12(b)(1) motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction") (citation omitted); *accord Savage v. Glendale Union High School, Dist. No. 205*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction"). Specifically, "[t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite*, 749 F.3d at 1121; *A.D. by Carter v. Washburn*, 2017 WL 1019685, at *4 (D. Ariz. Mar. 16, 2017) (factual attacks to a plaintiff's standing "requires the plaintiff to support its jurisdictional allegations with competent proof, under the same evidentiary standard applied on summary judgment"). The existence of disputed material facts does not preclude the trial court from evaluating the merits of jurisdictional claims, unless those material disputed facts are intertwined with the merits of a plaintiff's claim. *White*, 227 F.3d at 1242; *Leite*, 749 F.3d at 1122 n.3.

In support of its motion to dismiss, Jacksons furnished a declaration from its Vice President and a copy of the Authorization provided to Fisher. Plaintiffs do not dispute the facts asserted therein or the authenticity of the evidence presented by Jacksons.

1 Instead, in support of their opposition, Plaintiffs furnished two electronically-signed declarations from the named Plaintiffs, Nelson and Fisher. (Docs. 27-1 and 27-2). Jacksons objects to the Court's consideration of these declarations on the grounds that they are electronically signed and thus are inadmissible. (Doc. 30 at 4).

### B. Standing

Jacksons argues that the Court lacks subject matter jurisdiction because Plaintiffs have failed to establish they have standing to sue under the EFTA. Article III provides that federal courts may only exercise judicial power in the context of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Lujan*, 504 U.S. at 559. For there to be a case or controversy, the plaintiff must have standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("*Spokeo II*"). *See id*. at n.6 (noting that even plaintiff who seek to "represent a class must allege and show that they personally have been injured") (internal quotations omitted). Whether a plaintiff has standing presents a "threshold question in every federal case [because it determines] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

To establish standing, a plaintiff seeking the jurisdiction of a federal court has the burden of clearly demonstrating that he has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo II,* 136 S. Ct. at 1547 (quoting *Warth*, 422 U.S. at 518); *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting the party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss). Here, Jacksons argues that the Plaintiffs have failed to show that they have standing to sue under the EFTA because (1) Plaintiffs have not suffered any concrete injury; and (2) to the extent they have, any injury Plaintiffs have suffered cannot be attributed to Jacksons. Jacksons does not challenge the redressability requirement.

#### 1. Concreteness Requirement

Although Jacksons contends that Plaintiffs' purported injury is not plausibly

traceable to Jacksons, its primary challenge is to the existence of Plaintiffs' injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Jacksons contends that its alleged failure to provide Plaintiffs with a copy of Fisher's Authorization fails to meet the "concreteness" requirement for injury-in-fact. In doing so, Jacksons relies heavily on the recent Supreme Court opinion in *Spokeo II*.

In *Spokeo II*, the Supreme Court held that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo II*, 136 S. Ct at 1549. That plaintiff must still demonstrate a concrete injury. *Id*. A concrete injury, according to the Court, "must be '*de facto*'; that is, it must actually exist." *Id.* at 1548 (quoting Black's Law Dictionary 479 (9th ed. 2009)) (noting that in comparison, a particularized injury is one that "affect[s] the plaintiff in a personal and individual way") (quoting *Lujan*, 504 U.S. at 560 n.1). Though a "risk of real harm" can satisfy the concreteness requirement, the Court cautioned that allegations of a "bare procedural violation, divorced from any concrete harm" will not.[4] *Id.* In its motion, Jacksons argues that the injury alleged by Plaintiffs in the FAC is a purely procedural violation of the EFTA, and is not accompanied by any concrete harm.

In determining whether a violation of a statutory provision satisfies the injury-in-

---

[4] Harm stemming from a statutory violation, which sometimes may be characterized as "intangible" harm, may raise questions as to whether that harm is "concrete" for purposes of standing. *See id.* at 1549 (noting that in creating statutory rights of action, Congress may identify and elevate an otherwise intangible harm to the level of a *de facto* injury). Examples of intangible injuries include libel, slander, and violations of the constitutional rights to free speech and free exercise. *See Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); Restatement (First) of Torts §§ 569, 570). The Court in *Spokeo* was careful to emphasize that an injury in fact may exist even if it is intangible. 136 S. Ct. at 1549 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete").

fact-concreteness requirement, the Ninth Circuit has instructed courts to assess: "(1) whether the statutory provisions at issue were established to protect [plaintiffs'] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Robins v. Spokeo, Inc.,* 867 F.3d 1108, 1113 (9th Cir. 2017) ("*Spokeo III*").

### a. Whether the EFTA Procedural Requirements Were Established to Protect Consumers' Concrete Interests

In accordance with *Spokeo III*, the Court will first assess whether the EFTA procedural requirements were established to protect consumers' concrete interests, or were instead intended to provide consumers purely procedural rights.

Enacted in 1978 as an amendment to the Consumer Credit Protection Act[5], 15 U.S.C. § 1601 *et seq.*, the EFTA creates a "framework [of] rights, liabilities, and responsibilities of participants in electronic fund transfer systems…" 15 U.S.C.A. § 1693(b). "The primary objective of this subchapter, however, is the protection of individual consumer rights." *Id.*; 12 C.F.R. § 1005.1(b) (stating in part that "[t]he primary objective of the act and this part is the protection of individual consumers engaging in electronic fund transfers and remittance transfers").[6] Indeed, "[t]he statute covers a wide range of electronic money transfers and subjects them to a litany of procedural requirements designed to protect consumers from transactions made in error or without their consent." *Abrantes v. Fitness 19 LLC*, 2017 WL 4075576 (E.D. Cal. Sept. 14, 2017) (quoting *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009) (citing §§

---

[5] In addition to the EFTA, the CCPA includes several other consumer-protection statutes, including the Truth in Lending Act, 15 U.S.C. §§ 1601–1667f, and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x.

[6] 12 C.F.R. § 1005.1(b) is part of Regulation E, which is the regulation that carries out the EFTA. Rule-making authority under the EFTA initially was exercised by the Federal Reserve Board, which published regulations implementing the Act at 12 C.F.R. § 205. In 2010, the Dodd–Frank Wall Street Reform and Consumer Protection Act transferred rule-making authority to the Consumer Financial Protection Bureau ("CFPB"). In December 2011, the CFPB restated Regulation E without substantive changes at 12 C.F.R. § 1005.

1693a(6), 1693b-1693f)).

Given the stated purpose of the statute and the substance of the various procedural requirements identified therein, the Court finds that the statutory provisions of the EFTA were established to protect consumers from unauthorized transfers and transfers made in error. As such, the interests sought to be protected by these requirements are "concrete" and are not "purely procedural rights" afforded to consumers engaging in electronic fund transfers. *Spokeo III*, 867 F.3d at 1113.

### b. Whether Jacksons' Failure to Provide a Copy of the Signed, Written Authorization Actually Harmed Plaintiffs' Interests or Presented a Material Risk of Harm to Those Interests

Having concluded that the statutory right in question is not merely procedural, the Court will now assess whether the allegations of the FAC sufficiently establish that Jacksons' failure to provide a copy of Fisher's Authorization actually harmed the protectionary interests afforded to Plaintiffs under the EFTA, and if not, whether the failure presented a material risk of harm to those interests.

In their Amended Complaint, Plaintiffs allege that they suffered actual harm when Jacksons failed to provide them with a copy of the written Authorization because they were (1) "unaware that Defendant would be taking money from their bank account on a monthly basis" (Doc. 19 ¶ 28); (2) "confused when they later found that Defendant had taken money from their bank account" (Doc. 19 ¶ 29); (3) "had to incur the time, expense, and disutility associated with discovering why Defendant had done so" (Doc. 19 ¶ 29); and (4) "forced to obtain counsel to investigate the matter further" (Doc. 19 ¶ 30). Jacksons says that the plain terms of the Authorization contradict any allegation that Plaintiffs were "unaware" their account would be debited on a monthly basis, and generally argue that the remaining allegations do not suffice as harm sought to be protected by Congress when it passed the procedural requirements of the EFTA. In their response to the motion to dismiss for lack of standing, Plaintiffs largely ignore the

allegations in their FAC.[7] Instead, they attempt to bolster proof of their actual harm by alleging, in two electronically-signed declarations, that a Jacksons' employee tricked Fisher into buying a perpetual carwash plan, an injury they claim would have been quickly rectified had Fisher been provided a copy of his signed Authorization at the time of the transaction.

The Court finds that the allegations related to Plaintiffs' alleged actual harm in the FAC are insufficient to establish standing under the EFTA. Plaintiffs do not allege that Fisher misunderstood the terms of the Authorization or that Jacksons exceeded those terms in any way. Moreover, the plain language of the signed Authorization contradicts Plaintiffs' allegation that they were "unaware" Jacksons would be taking money from their bank account on a monthly basis. (*See* Doc. 15-1). *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) (noting that in assessing standing "[i]t is well established that we need not 'credit a complaint's conclusory statements without reference to its factual context'") (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009)). As Jacksons notes in its reply brief, Fisher was provided with and executed the Automatic Recharge Authorization ticket prior to purchasing the carwash plan. The plain language of the Authorization (notably titled, "Automatic *Recharge* Authorization") supports Jacksons' contention that Fisher knowingly authorized Jacksons to "charge [his] credit card account $40 on a monthly basis." (Doc. 15-1 at 2). Thus, the Court finds that any allegations that Plaintiffs were "unaware" or "confused" by the monthly charges are contradicted by the terms of the written Authorization signed by Fisher. Moreover, any injury Plaintiffs suffered as a result of having to investigate the charges to their account, including obtaining counsel to investigate, does not amount to the harm Congress intended to protect against when it mandated the receipt requirement in the EFTA. Indeed, Congress addressed the risk of confusion in the EFTA's error resolution provision, which outlines how consumer can investigate erroneous transfers. 15 U.S.C. §

---

[7] Indeed, their brief is devoid of any citation to any allegation in the FAC.

1693f(a).

Plaintiffs' FAC also alleges that Jacksons' failure to provide them with a written copy of the Authorization at the time of the transaction exposed them "to an increased risk of fraud" (Doc. 19 ¶ 31). Beyond this conclusory statement, Plaintiffs do not explain in their FAC how this particular failure exposed them to an increased risk of fraud. Citing recent district and subsequent appellate court decisions out of the Second Circuit, Jacksons argue that none of the allegations in the FAC establish that Plaintiffs suffered concrete injury to interests sought to be protected under the EFTA. *See Aikens v. Portfolio Recovery Ass. LLC*, 716 Fed. Appx. 37 (2d Cir. 2017), *aff'ming Aikens v. Portfolio Recovery Ass. LLC*, 2017 WL 1091591 (E.D.N.Y Mar. 22, 2017).

The issue of whether a plaintiff had alleged concrete injury for purposes of standing under the EFTA where a defendant had failed to obtain or provide the plaintiff a copy of her written authorization was squarely addressed by the New York district court in *Aikens*. There, the plaintiff and a debt collector entered into an oral agreement over the telephone, whereby the plaintiff authorized the debt collector to automatically debit her checking account each month until her debt was satisfied. *Id.* at *1. After debiting her account for nearly a year, plaintiff brought suit under the EFTA, seeking statutory damages for the debt collector's failure to obtain her written consent for the monthly automated debits as well as its failure to provide her with a copy of that consent at the time of the transaction. *Id.* The district court found the plaintiff lacked standing and dismissed the action with prejudice. *Id.* at *2. The court specifically found that the plaintiff had failed to allege any "concrete injury," and had only alleged a bare procedural violation, insufficient for standing purposes under *Spokeo II*. *Id.* In doing so, the court reasoned:

> Plaintiff amassed a debt that she failed to pay. After acquiring that debt, [defendant] entered into a monthly payment plan with Plaintiff, which Plaintiff authorized and agreed to, whereby [defendant] would debit Plaintiff's checking account each month. Now, Plaintiff seeks to obtain money damages from [defendant] for allegedly violating the EFTA by not obtaining Plaintiff's agreement in writing. [] There is no concrete injury

- 11 -

> here. **Plaintiff authorized [defendant] to withdraw money from her account to repay the debt she owed. [Defendant] did not take more money than was agreed to. Nor did they withdraw the money from any other account than that which Plaintiff authorized.** The Court fails to see how Plaintiff suffered any injury here whatsoever.

*Id*. (emphasis added). In a summary opinion, the Second Circuit affirmed the district court's decision to dismiss for lack of subject matter jurisdiction.[8] The Second Circuit observed that where the defendant had obtained the oral permission of plaintiff to make the debits, and where she had clearly received the benefit of those debits (monies which were used to pay off her debt), she could not show that the lack of a written agreement was a concrete harm necessary to establish her standing to sue. 716 Fed. Appx. at 40 (noting also that the EFTA only treats a transfer as "unauthorized" if "the consumer receives no benefit" and that a transfer is not "unauthorized" when the consumer furnishes the "means of access" the bank account and does not ask the bank to stop the transfers) (citing 15 U.S.C. § 1693a(12)(A)).

The Second Circuit also found that the plaintiff did not establish risk-based standing.[9] *Id*. Accepting plaintiff's position that "Section 1693e(a) is the shield that insulates consumers from" the risk of fraud, embezzlement, and unauthorized transfers associated with electronic transactions, the court nonetheless found that the plaintiff had "failed to allege in her complaint that she herself was exposed to any such risks." *Id*. The court stated that "Aikens' filings in the District Court articulated no theory at all to justify her hypothesis that [defendant] created an increased risk of fraud by obtaining her consent over the phone and mailing her a confirmation letter rather than obtaining her contemporaneous written authorization." *Id*.

. . . .

---

[8] The appellate court remanded the case with instructions that the district court amend its judgment to be a dismissal without prejudice. *Aikens*, 716 Fed. Appx. at *4 (citing *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 121 (2d Cir. 2017) (finding when a federal case is dismissed for lack of subject matter jurisdiction, the court lacks the power to dismiss with prejudice).

[9] The court noted that the district court had failed to assess whether the alleged violations raised a material risk of injury in its decision.

- 12 -

Jacksons urges this Court to apply the same logic to these facts. Jacksons specifically argues that like the plaintiff in *Aikens*, Plaintiffs authorized the debits in question when Fisher signed the Automatic Recharge Authorization. Jacksons also contends that Plaintiffs do not challenge the amount debited by Jacksons from their account or state that Plaintiffs have ever been denied a car wash for which they have paid. (Doc. 23 at 9). As such, Jacksons contends that the debits to Plaintiffs' accounts were not unauthorized or in error and consequently, Plaintiffs cannot establish that they have suffered any injury sought to be protected by the receipt requirement of the EFTA.

In response, Plaintiffs point out that *Aikens* is not binding on this Court, and is, in any event, distinguishable. Plaintiffs point out that unlike the FAC, the plaintiff in *Aikens* failed to plead any fraud. They argue that here, "Defendant's failure to provide Plaintiffs a copy of their electronic fund transfer authorization – which it obtain via trickery – did more than increase the risk of fraud, it actually allowed Defendant's fraud to proceed." (Doc. 27 at 12). The critical fault with this argument is that beyond the conclusory allegation in their FAC, i.e. – that Jacksons' failure to provide them with a written copy of the Authorization exposed them "to an increased risk of fraud" (Doc. 19 ¶ 31) – Plaintiffs have not alleged *any* fraud in their FAC. Indeed, paragraph 31 is the only place in the FAC that even mentions the word fraud. On its face, therefore, the FAC is insufficient to establish actual or risk-based standing. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (finding that a complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do"). *See also* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud or mistake "state with particularity the circumstances constituting fraud or mistake"). Indeed, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotation marks and citation omitted).

. . . .

Moreover, Plaintiffs' attempt to bolster these fraud allegations with statements in their electronically-signed Declarations does not meet their burden of establishing concrete injury by a preponderance of the evidence. The allegations found in these declarations go far beyond the sole, conclusory "risk of fraud" allegation noted in the FAC. For example, in Fisher's Declaration, he states that "I did not realize that I had provided Defendant authority to repeatedly debit my account" and that because "Defendant did not provide me a copy of the [Authorization] that it tricked me into providing…I did not know the terms of the authorization or how to cancel it." (Doc. 27-2 ¶¶ 13, 16-17).

In assessing standing to sue, courts apply the same evidentiary standards as they apply to documents supporting and opposing motions for summary judgment. In other words, only potentially admissible evidence may be considered by the court. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 56(c)(4) of the Federal Rules of Civil Procedure states that affidavits and declarations submitted for or against a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See* 28 U.S.C. § 1746(2). Here, both of the Plaintiffs' Declarations are electronically signed and no Local Rule allows for the filing of an electronically-signed declaration.[10] While this deficiency permits the Court to disregard the Declarations, they will nonetheless be considered as they illustrate the flaw in Plaintiffs claim.

Plaintiffs' Declarations, fail to satisfy Plaintiffs' burden to establish their injuries-in-fact by a preponderance of the evidence. As noted, these allegations are not in the Plaintiffs' FAC and any alleged injury described therein is contradicted by plain terms of the Authorization that Fisher signed and provided to Jacksons. Plaintiffs have thus failed to allege any plausible concrete injury suffered as a result of Jacksons' failure to provide

---

[10] *See* Fed. R. Civ. P. 5(d)(3) (stating that "A Court may, by local rule, allow papers to be filed, signed, or verified by electronic means…").

- 14 -

Fisher a copy of his Authorization.

### 2. The Traceability Requirement

Even if the Court were to find that Plaintiffs had sufficiently alleged a risk of fraud here, Plaintiffs cannot and have not alleged that such injury is fairly traceable to Jacksons. Although Plaintiffs do not have to prove that Jacksons proximately caused injuries at this phase of the case, they do have the burden of "demonstrating that [their] injury-in-fact is…fairly traceable to the challenged action." *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Here, Plaintiffs' "threadbare allegations fall short of demonstrating that link." *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 76-77 (9th Cir. 2018) (finding fraudulent charges on plaintiff's credit card and stolen identity were not "'fairly traceable' to the [defendant's] printing of a receipt showing the expiration date of that debit card"). Plaintiffs' FAC conclusively states that "Because Plaintiffs were not provided a copy of their signed, written authorization at the time it was made, they were unaware that Defendant would be taking money from their bank account on a monthly basis . . . were confused when they later found that Defendant had taken money . . . and had to incur the time, expense, and disutility associated with discovering why Defendant had done so." (Doc. 19 ¶¶ 28-29).

In *Daniel*, the Ninth Circuit found that a plaintiff's allegation that the fraudulent use of her credit card by another was caused by the inclusion of the expiration date of her card on a receipt from defendant in violation of the FCRA was conclusory and insufficiently alleged the "fairly traceable" leg of standing. 891 F.3d at 767. The court stated: "Merely asserting that a theft occurred at an unspecified time 'after' the debit card transaction – absent any other details – does not connect the dots. Even crediting that temporal allegation as true, as we must at this stage, [plaintiff] alleged no link between the receipt and the identify theft." *Id*.

Plaintiffs here have similarly failed to connect the dots between any alleged risk of future fraud and Jacksons' alleged failure to provide Fisher a copy of his Authorization. This lack of a causal link is particularly apparent with regard to Nelson, who was not

- 15 -

present with Fisher when he signed the Authorization.  Jacksons therefore could not have provided Nelson a copy of it, and under the EFTA, had no obligation to do so.  *See* 15 U.S.C.A. § 1693e(a).  The Court also finds that the statements that Nelson, who allegedly handles the couples' finances, "would have discovered Defendant's fraud and immediately cancelled Defendant's service" (Doc. 27-1 ¶ 15) require the Court to impermissibly "engage in an ingenious academic exercise in the conceivable to explain how defendants' actions cause [their] injury." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (internal quotation marks and footnotes omitted).  But the necessary link is also absent for any injury to Fisher, who prior to authorizing Jacksons to access his bank account, signed a ticket that in no ambiguous terms granted Jacksons' permission to debit his account on a monthly basis.  Again, Plaintiffs do not allege that the terms of the Authorization were ambiguous or misleading.  Thus even if the Court were to credit the new allegations of fraud or "trickery" in Plaintiffs' Declarations to sufficiently allege a plausible concrete harm to Plaintiffs, Plaintiffs cannot and have not plausibly alleged injury that is fairly traceable to its failure to provide Fisher a copy of his Authorization.

Plaintiffs do not have standing to sue under the EFTA and Jacksons' motion to dismiss for lack of subject matter jurisdiction is granted.

**IT IS SO ORDERED** that Jacksons' Motion to Dismiss Plaintiffs' First Amended Complaint for lack of jurisdiction (Doc. 23) is **granted**.  The Clerk of Court is respectfully directed to terminate this matter.

**IT IS FURTHER ORDERED** that Jacksons' Motion to Dismiss Plaintiffs' original complaint (Doc. 14) is **denied as moot**.

**Dated** this 23rd day of July, 2018.

Honorable Diane J. Humetewa
United States District Judge